## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| **COURTHOUSE NEWS SERVICE, LEE ENTERPRISES, INC**<br><br>Plaintiffs,<br><br>v.<br><br>**ROBERT GAST**, in his official capacity as Iowa State Court Administrator, **ANNE SHEELEY**, in her official capacity as the Clerk of the District Court for Polk County,<br><br>Defendants. | Case No: 23-cv-_____ |

## COMPLAINT

Plaintiffs Courthouse News Service ("Courthouse News") and Lee Enterprises, Inc. ("Lee Enterprises"), by and through their undersigned attorneys, allege the following in support of their Complaint against Defendant Robert Gast, in his official capacity as Iowa State Court Administrator ("Gast" or "Administrator"), and Defendant Anne Sheeley, in her official capacity as the Clerk of the District Court for Polk County ("Sheeley" or "Clerk").

## INTRODUCTION

1.      State and federal courts across the country have historically made new civil petitions available to the press and public as the court received them.  Eighth Circuit Judge Bobby Shepherd recently described this traditional access during oral arguments in *Courthouse News v. Gilmer et al.* (8th Cir. No. 21-2632), a case involving the same issues as here:  "There was a time when—and some in this room may remember it—when you took a pleading to the courthouse and the clerk stamped it physically and it went into different bins and it was available immediately."

2.      Traditional access was the norm in Iowa.  Journalists and the public could review

the new civil petitions in a wire tray kept at the corner of the filing counter on the ground floor of the Polk County Courthouse as soon as they were file-stamped.

3.     In the transition from paper filing to electronic filing ("e-filing") federal courts and many state courts kept the tradition in place, making complaints available as they crossed the virtual intake counter.  However, the Iowa state courts, including Polk County District Court, did not.

4.     With the current e-filing procedures, Defendants withhold the new civil petitions until court staff have finished a series of administrative steps commonly referred to as "processing."  As a result, all newly e-filed civil petitions are effectively sealed upon receipt, with access to a large majority of them commonly withheld until at least the day after filing.

5.     The First Amendment to the United States Constitution provides the press and public with a qualified right of access to civil petitions.  Whether new civil petitions are paper-filed or e-filed, this right of access attaches ***on receipt***, when a new filing is delivered to, or deposited with, the clerk.  Policies and practices that cause delays in access are subject to constitutional scrutiny, with Defendants bearing the burden of showing that such policies and procedures are essential to preserve an overriding governmental interest and narrowly tailored to serve that interest.

6.     Courthouse News and Lee Enterprises have a First Amendment right of access to new civil petitions filed with Iowa state courts.  Such access is fundamental and essential to accurate and fair news reporting of civil court actions, and, thus, vital to the public's ability to monitor the activities of the judicial branch of government.  Any unjustifiable delays in access result in unconstitutional restrictions of the press's and public's ability to perform that important role.

7.     When a petition is withheld, the news it contains grows stale.  The public is left unaware that a civil action has commenced and that a litigant has invoked the power of the judicial branch of government.

8.     Defendants enforce a policy and practice of withholding access to newly received civil petitions, effectively sealing them, until after manual processing by the clerk is completed. Consequently, access to new e-filed civil petitions in Iowa state courts, including Polk County, often is delayed for days following the court's receipt of the petition.

9.     The delays in access experienced by Plaintiffs in Polk County, and throughout Iowa state courts, are the result of Defendants' policy and practice of withholding access to new e-filed petitions until after they have been administratively processed by court staff.  New petitions that are electronically filed into the Iowa e-filing system reside, often for days or over a week, in an electronic database where they are withheld from public view while awaiting manual processing by court staff.

10.    These delays are unnecessary, as demonstrated by the practice of federal and state courts across the country, including this Court, that provide access to new petitions on receipt and before processing.  Defendants are capable of providing such access but have chosen not to do so. Without Defendants' no-access-before-process policy, there would be no delay.

11.    Plaintiffs bring this action to address constitutional wrongs, to challenge the legality of Defendants' policies and practices in Polk County District Court, and to seek declaratory and injunctive relief prohibiting Defendants from enforcing their policy and practice that results in violations of Plaintiffs' constitutional right of access to newly e-filed civil petitions in Polk County District Court.

## JURISDICTION AND VENUE

12.     Plaintiffs' claims arise under the First and Fourteenth Amendments to the U.S. Constitution and the Civil Rights Act, Title 42 U.S.C. § 1983, *et seq.*  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201 and 2202 (declaratory relief and further relief).  Defendants are subject to personal jurisdiction in this District.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b) because the headquarters of the Iowa Judicial Branch and the Polk County District Court are located in this District and because a substantial part of the events or omissions giving rise to Plaintiffs claims occurred in this District.

## PARTIES

14.     Courthouse News is a nationwide news service founded almost 30 years ago out of a belief that a significant amount of news about civil litigation went unreported by traditional news media, a trend that has only increased in the last decade.  Courthouse News now employs approximately 240 people, most of whom are editors and reporters, covering state and federal trial and appellate courts in all 50 states in the United States.

15.     Based in Davenport, Iowa, Lee Enterprises is one of the largest newspaper publishers in the United States, providing high quality and trusted news and information to more than 75 markets all across the county.  In Iowa alone, Lee Enterprises publishes The Quad-City Times in Davenport, The Daily Nonpareil in Council Bluffs, the Globe Gazette in Mason City, The Muscatine Journal in Muscatine, The Sioux City Journal in Sioux City and The Courier in Waterloo Cedar Falls.

16.     Defendant Gast is the State Court Administrator for Iowa and is named as a

defendant herein in that official capacity.  Defendant Gast, as Administrator, is responsible for the day to day management of Iowa's state court system, *see* Iowa Code § 602.1209, which includes procurement, implementation, development and/or maintenance of all software applications used by the Iowa courts, including the Iowa e-filing system.  *See* Iowa R. Elec. P. § 16.201(5).

17.     Defendant Sheeley is the Clerk for the District Court of Polk County and is named as a defendant herein in that official capacity.  Sheeley, as Clerk, is responsible for maintaining records of court filings at the Polk County District Court and for providing public access to those records.  *See* Iowa Code §§ 602.8102, 602.8104.

18.     Acting in their official capacities, Defendants and those acting under their direction and supervision are directly involved with and/or responsible for the delays in access to new petitions experienced by Courthouse News, Lee Enterprises, and other members of the press, which acts reflect the official policies and practices of the Administrator's office and the Clerk's office.

19.     Defendants' actions, as alleged in this Complaint, are under the color of Iowa law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

20.     Defendants are sued in their official capacities only.  Plaintiffs seek relief against Defendants, as well as their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them or at their direction or under their control.

21.     Plaintiffs are informed and believe that Defendants are responsible for providing access to new petitions filed in the Polk County District Court.

## FACTUAL ALLEGATIONS

**A.      Plaintiffs Report Daily News From Federal And State Courts, Including Iowa State Courts.**

22.     Courthouse News offers its readers a variety of publications.  Its *New Litigation Reports* contain original, staff-written summaries of significant new civil lawsuits, and are sent to subscribers via e-mail each evening.

23.     Among Courthouse News' other publications are a monthly newsletter, the *Entertainment Law Digest*, as well as the *Daily Brief*, which covers published, nationwide appellate rulings, including all U.S. Supreme Court and federal circuit decisions, and significant rulings from the federal district courts.  Courthouse News also publishes a freely available website, www.courthousenews.com, featuring news reports and commentary, which is read by roughly 30,000 people every weekday.  The website functions much like a print daily newspaper, featuring staff-written articles from across the nation that are posted throughout each day and rotated on and off the page on a 24-hour news cycle.  On May 17, 2023, for example, the news page carried staff-written stories about a U.S. Supreme Court decision upholding an Illinois ban on assault weapons, a Los Angeles judge's decision to block use of pre-arraignment cash bail, a Council of Europe summit in Iceland over damage assessment in Ukraine, and a story about torrential rain and flooding along 14 rivers in northern Italy.

24.     Courthouse News has been credited as the original source of reporting on various topics by a wide range of publications, including: *The Mercury News, ABA Journal*, ABC News, *The Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, *The Christian Science Monitor*, The Daily Beast, *The Dallas Morning News*, Forbes, Fox News, *The Guardian*, The Hill, *Houston Chronicle*, The Huffington Post, *Long Island Press*, *Los Angeles Times*, *Mother Jones*, National Public Radio (NPR); NBC News, *New York Daily*

*News*, *New York Magazine*, *The New York Times*, *The Orange County Register*, Politico, *Rolling Stone*, *Salt Lake City Tribune, San Antonio Express-News*, Slate, *The Telegraph* (UK), *The Wall Street Journal*, *The Washington Post*, *The Washington Times*, *Women's Health Policy Report*, United Press International (UPI), *USA Today*, *U.S. News and World Report*, and the YouTube news channel.   American, Canadian, and New Zealand radio shows have also interviewed Courthouse News reporters.

25.     Courthouse News has more than 2,200 subscribers nationwide, including law firms, law schools, government offices and news outlets such as: The Associated Press, *The Atlanta Journal Constitution*, *The Boston Globe*, CNN, *The Dallas Morning News*, *Detroit Free Press*, International Consortium of Investigative Journalists, Fox Entertainment Group, *Honolulu Civil Beat, Las Vegas Review-Journal, Los Angeles Times*, North Jersey Media Group, *Pacific Coast Business Times, Portland Business Journal, St. Paul Business Journal, The Salt Lake Tribune*, *The San Jose Mercury News, San Antonio Express News*, *Tampa Bay Business Journal*, *The Wall Street Journal*, Variety, Walt Disney Company, and Warner Bros.

26.     Courthouse News subscribers also include educational institutions, including Drake University Law Library, Boston University, Columbia Journalism Investigations, MIT School of Management, Stanford University, University of Chicago, University of Maryland – College of Journalism, University of North Carolina at Chapel Hill, and University of Virginia School of Law.

27.     In Iowa, Courthouse News covers general civil litigation, focusing on actions brought against business institutions and public entities.   This reporting is included in the Great Plains Regional Report ("Great Plains Report") which is sent to subscribers every evening. Courthouse News reporters do not cover family law matters, name changes, probate filings, most

mortgage foreclosures, or actions against only individuals unless the individual is well-known or otherwise notable.

28.     Iowa State courts provide remote access to civil petitions through a paid, subscription-based online platform accessible to registered members of the press.  However, civil petitions are not available via this platform—or by any other means—until after court staff have completed administrative processing.

29.     Courthouse News does not seek to review or report on the small number of new civil petitions that are statutorily confidential or accompanied by a motion to seal.  Such petitions are screened away from press and public access by Defendants' e-filing software.

30.     To prepare the *New Litigation Reports* and identify new cases that warrant coverage, Courthouse News' reporters visit their assigned courts either in person or remotely to review the petitions filed that day and determine which are of interest to Courthouse News' readers. Given the nature of the coverage in the *New Litigation Reports* and its other news publications, including its website, any delay in the ability of a reporter to obtain and review new petitions necessarily holds up Courthouse News' reporting of new controversies for subscribers and readers.

31.     Reporters for Lee Enterprises also review new civil filings in federal and state court to identify and report on cases that may be newsworthy and of interest to their audience, including new civil petitions filed in Polk County and other Iowa state courts.

32.     For the period of January 1, 2022, to March 31, 2023, Courthouse News' tracking shows that the Polk County District Court withheld the majority of new civil petitions from the public for a period of between one and three days, often longer.

**B.     A First Amendment Right of Access Attaches to Civil Petitions When the Court Receives Them.**

33.     A right of access grounded in the First Amendment applies to civil petitions.

34.     The analysis of a claim alleging a violation of the First Amendment right of access to court documents typically involves a two-step process.  The first step is to determine whether, as a general matter, there is a First Amendment right of access to a particular court proceeding or document.  If the answer to that question is "yes," the court proceeds to the second step, which is to determine if the restrictions on access to that court process or document satisfy constitutional scrutiny.  *See, e.g., Courthouse News Serv. v. New Mexico Admin. Off. of Cts.*, 53 F.4th 1245, 1264 (10th Cir. 2022) (discussing and applying two-step process established by *Press-Enterprise Co. v. Super. Ct.* ("*Press-Enterprise II*"), 478 U.S. 1 (1986)).

35.     To answer the question posed by the first step of the analysis, courts in the Eighth Circuit generally apply the *Press-Enterprise II* "experience and logic" test.  *Flynt v. Lombardi*, 885 F.3d 508, 512-13 (8th Cir. 2018).  To meet this test, a party must establish "(1) a historical tradition of accessibility, and (2) a significant positive role for public access in the functioning of the judicial process in question."  *Id.* (citing *Press-Enterprise II* as "setting forth what is now commonly referred to as the 'experience and logic' test for First Amendment access to judicial records").

36.     "[T]he federal courts of appeals widely agree" that the First Amendment right of access to information reaches civil judicial proceedings and records, and "every circuit court to consider the issue has uniformly concluded that the right applies to both civil and criminal proceedings."  *Courthouse News Serv. v. Planet (Planet III)*, 947 F.3d 581, 590 (9th Cir. 2020) (citing *Dhiab v. Trump*, 852 F.3d 1087, 1099 (D.C. Cir. 2017) (Rogers, J., concurring in part and concurring in the judgment) (collecting cases)).  It is thus well recognized that this right of access applies to civil petitions.

37.     Applying the "experience and logic" test, courts across the nation have recognized the existence of a qualified First Amendment right of access that attaches to civil petitions upon their receipt by a court.  *See, e.g.*, *New Mexico Admin. Off. of Cts.*, 53 F.4th at 1266 (holding that "the right of access attaches when a complaint is submitted to the court"); *Planet III*, 947 F.3d at 591 ("Both sides before us agree that experience and logic support a public right of access to newly filed civil complaints."); *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 141 (2d Cir. 2016) ("[e]xperience and logic both support access" to civil petitions); *Courthouse News Serv. v. Schaefer*, 440 F. Supp. 3d 532, 556-59 (E.D. Va. 2020) ("[T]he Court finds that the experience and logic test is satisfied and finds that the public and press enjoy a qualified First Amendment right of access to newly-filed civil complaints ...."), *aff'd*, 2 F.4th 318 (4th Cir. 2021).

38.     "There is no dispute that, historically, courts have openly provided the press and general public with access to civil complaints."  *Schaefer*, 440 F. Supp. 3d at 557; *accord Bernstein*, 814 F.3d at 141 ("Complaints have historically been publicly accessible by default ....").

39.     A new petition serves as the opening bell in a legal dispute.  In recognition of the media's traditional role as a surrogate observer for the general public as to what is happening in the courts, it has been a long-standing tradition for courts to provide reporters—especially those who visit the courts daily—with access to new civil petitions upon receipt for filing and before administrative processing.  This ensures that interested members of the public learn about new cases contemporaneously with their filing, while those cases are still newsworthy and likely to be the subject of public attention and discussion.

40.     Historically, reporters covering the courts could review and report on newly-filed civil petitions on the day of filing by looking through the new petitions at the courthouse.  This

10

access generally occurred upon the court's receipt of a new petition and before the clerk's office performed the additional administrative tasks that follow the receipt of a new petition—a process that was traditionally called "docketing" but in recent years, especially as courts have moved to electronic case management systems and e-filing, has been referred to as "processing."

41.    In addition to Iowa, Courthouse News has also collected and filed evidence showing that, in states where it covers the courts in person on a regular basis, there is a history of access to new civil complaints and petitions upon receipt regardless of whether court staff have completed clerical processing in every region of the United States—north (Michigan, Minnesota and Wisconsin), south (Alabama, Arkansas, Georgia, Louisiana, Tennessee, Texas, and Virginia), middle (Colorado, Illinois, Nebraska, Ohio, Oklahoma, and Utah), east (Connecticut, New Jersey, New York, Pennsylvania, and Vermont) and west (Alaska, Arizona, California, Hawaii, Nevada, Oregon, and Washington).  This evidence "demonstrat[es] that there is a long history of courts making complaints available to the media and the public soon after they are received"—"rather than after it is 'processed'"—"regardless of whether such courts use paper filing or e-filing systems." *Courthouse News Serv. v. Planet*, 2016 WL 4157210, *12-13 (C.D. Cal. May 26, 2016, *aff'd in relevant part, rev'd in one part on other grounds*, 947 F.3d 581 (9th Cir. 2020).

42.    "Logical considerations also support a presumption of public access." *Bernstein*, 814 F.3d at 141.

43.    The First Amendment right of access exists to enable free and informed discussion about governmental affairs, which includes ongoing judicial proceedings.  Courthouse News facilitates those important discussions by visiting courthouses on a daily basis and seeking timely access to newly filed civil petitions in order to report on their contents.

44.    The filing of a petition invokes the authority of the courts, and the American people

have a First Amendment right to know that the plaintiff has invoked that power to resolve a dispute and achieve a personal end.  The petition is the basis for the dispute and plays a significant role throughout all phases of the litigation.

45.      Public access to the petition allows the public to supervise the judicial process by allowing the public to know the parties to the dispute, the alleged facts, the issues for trial, and the relief sought.  Public access to the petition also allows the public to understand the activity of the courts, enhances the accountability of the court system, and informs the public of matters of public concern.  When a petition is withheld from the public, it leaves the public unaware that a claim has been leveled and that state power has been invoked.

**C.     Delays in Access to New Civil Petitions Infringe Upon Plaintiffs' First Amendment Rights.**

46.      Where the qualified First Amendment right of access attaches to a particular court process or document, as it does with new civil petitions, the right attaches upon the court's receipt of the document, and the press and public generally have a contemporaneous right of access.  *See, e.g., New Mexico Admin. Off. of Cts.*, 53 F.4th at 1269 ("[A] necessary corollary of the right to access is a right to *timely* access."); *Planet III*, 947 F.3d at 588, 591 (holding the qualified right of access to newly filed civil actions attaches when the lawsuit is filed, *i.e.*, when it is received by the court); *Schaefer*, 440 F. Supp. 3d at 559 (the public and press have a "contemporaneous right of access" to newly filed civil actions—meaning "on the same day as filing, insofar as practicable").

47.      Turning to the second analytical step of a claim alleging a violation of the First Amendment right of access, after the court determines the right of access attaches to a particular record or proceeding, a presumption of access arises that may be restricted only if "closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Press-Enterprise II*, 478 U.S. at 13-14; *accord Planet III*, 947 F.3d at 596; *Bernstein*, 814 F.3d at 144; *Schaefer*, 440

F. Supp. 3d at 559-60.  Here, Defendants' policies are not essential to preserve higher values and are not narrowly tailored.

48.     Since Iowa's adoption of e-filing, access delays have become pervasive.  Unlike most federal district courts and many state courts, Iowa state courts do not make newly filed petitions available upon e-filing with the court.  Instead, they seal the petitions while they sit in a database where they have been received and only allow access after court staff have processed them and placed them in the public docket.  As a direct result, for the period of January 1, 2022, to March 31, 2023, Courthouse News' tracking shows that the Polk County District Court withheld the majority of new civil petitions from the public for a period of between one and three days, often longer.

49.     The delays in access experienced by Plaintiffs at the Polk County District Court, and throughout Iowa state courts, are unnecessary and easily avoidable.  Courts across the nation— including the U.S. District Court for the Southern District of Iowa—provide the press and public timely access to new e-filed civil actions through means readily available to Defendants.

50.     Historically, before e-filing, reporters covering the courts could review and report on newly filed, paper civil petitions on the day of filing by looking at them at the courthouse at any time during the day.  As was the case at the Polk County District Court, this access generally occurred via a public bin or box available to the press and public right after they crossed the counter.  Federal courts throughout the nation commonly kept a polished, wooden box on the intake counter where new complaints were placed right after they crossed the counter. In this Court, reporters could request newly filed petitions directly from the court clerk.

51.     Compared to the paper era, providing timely access in an e-filing court is even easier.  An e-filed petition is simply a .pdf document that can be downloaded and viewed.  Nothing

13

prevents a reporter from reviewing a new petition before it is processed by a clerk, nothing prevents a clerk from processing a petition at the very moment members of the press or public are reading it, and nothing prevents a clerk from processing a petition after review by the press or public, when the clerk's schedule permits.

52.     Moreover, courts can automatically segregate confidential filings based on designations made by the filer in the e-filing interface.   Online filings often require an acknowledgement from the filer that he must comply with redaction rules.  *See* Iowa R. Elec. P. 16.601(1)(a) ("It is the responsibility of the filer to ensure that protected information is omitted or redacted from documents before the documents are filed.").

53.     As was the case in the paper world, access in e-filing courts is delayed only if courts withhold new civil actions until after court staff complete administrative processing.  Because most courts do not complete these clerical tasks for all of the day's new civil actions on the day of filing, the result of a no-access-before-process policy is to prevent the press from learning about a substantial percentage of new civil actions until at least the day after filing, at which point the information is old news and less likely to capture the public's attention.

54.     Processing new petitions is not the problem.  All e-filing courts must conduct some kind of administrative processing of new complaints.  The problem arises when a court withholds new complaints from the press and public until after processing is complete.

55.     Courts that provide access as e-filed complaints are received, regardless of whether court staff have completed clerical processing, include virtually every federal district court and state courts in Alabama, Arizona, California (nearly all e-filing courts, covering 85% of the state's population), Connecticut, Florida, Georgia (courts in Atlanta metropolitan area), Hawaii, Nevada (in the state's biggest court in Las Vegas), New York, Texas (Austin), Utah, Vermont, and

Washington (Tacoma).  These courts provide this access in various ways, all of which are available to Defendant.

56.     Courts, like those identified above, that do not withhold public access for processing allow new civil actions to be read and reported when they are received by the court, when the new action is still newsworthy and capable of commanding public attention, as reporters and the public did in Polk County District Court through the wire basket on the counter.

57.     Courthouse News has asked Defendants to stop denying public access to new e-filed petitions until after they have been processed by court staff and has informed Defendants of these commonly used alternatives.  To date, however, Defendants have refused Courthouse News' requests, and the Polk County District Court continues to withhold access to new e-filed petitions until after processing.  As a result, Plaintiffs continue to experience significant delays in gaining access to new civil petitions e-filed in that court.

58.     On September 16, 2022, Courthouse News sent a letter to Defendant Gast proposing a solution which, had it been adopted by Defendant, could have avoided the need for this action by resolving the delays caused by Defendants' process-first policies.  A copy of this letter is attached as Exhibit 1.

59.     On April 7, 2023, Courthouse News sent a letter to Defendant Sheeley, also proposing a solution to resolve the delays Courthouse News experienced at Polk County District Court.  A copy of this letter is attached as Exhibit 2.

60.     Defendant Gast responded only after the April 7 letter to Defendant Sheeley, but he provided no commitment to resolve the delays.  Courthouse News responded, noting the significant delays in even acknowledging its concerns and that Defendant Gast provided no

timeline for resolving any of those concerns.[1]

61.     What is more, Courthouse News' letters to Defendants were not the first time a member of the press or public had raised the issue of timely access to new filings to the Iowa Judicial Branch.  On December 24, 2018, the Iowa Freedom of Information Counsel—which at the time represented the interests of more than 40 news organizations including multiple organizations owned by Lee Enterprises, academic institutions, and Iowa businesses in advocating for the freedom of information in the state—sent a letter to the Iowa Judicial Branch noting the delays in access to newly filed lawsuits caused by Iowa's e-filing system and urging the Branch to adopt the same solution Courthouse News proposed.  *See* Ex. 4, at 4.

**COUNT ONE - Violation of U.S. Const. Amend. I and 42 U.S.C. § 1983**

62.     Plaintiffs incorporate the allegations of Paragraphs 1-61 herein.

63.     Defendants' actions under color of state law, including without limitation their policies and practices of withholding newly filed civil petitions from the press and public until after administrative processing, and the resulting delays in access to those petitions, deprive Plaintiffs, and by extension their subscribers, of their right of access to public court records secured by the First Amendment to the U.S. Constitution.

64.     The qualified First Amendment right to access new civil petitions filed in the Polk County District Court arises the moment those petitions are filed, and access may be restricted only if the restriction is essential to preserve an overriding government interest and is narrowly tailored to serve that interest.  For Defendants' policies and practices to survive *Press-Enterprise II*'s two-prong balancing test, Defendants "must demonstrate that (1) 'there is a "substantial

---

[1]     A copy of Defendant Gast's letter is attached as Exhibit 3.  Plaintiffs also provide their April 24, 2023 response as Exhibit 4.

probability' that [an overriding government interest] would be impaired by immediate access'; and (2) 'no reasonable alternatives exist to "adequately protect" that government interest.'" *New Mexico Admin. Off. of Cts.*, 53 F.4th at 1270.  Defendants cannot satisfy either prong of this test with respect to the policies and practices alleged in this Complaint.

65.     Plaintiffs have no adequate remedy at law to prevent or redress Defendants' unconstitutional actions and will suffer irreparable harm as a result of Defendants' violations of its First Amendment rights.  Plaintiffs are therefore entitled to a declaratory judgment and permanent injunctive relief to prevent further deprivation of the First Amendment rights guaranteed to it and its subscribers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.     A judgment pursuant to 28 U.S.C. § 2201 declaring that Defendants' policies and practices in the Polk County District Court that knowingly affect delays in access to newly filed civil petitions, including, *inter alia*, their policies and practices of denying access to petitions until after administrative processing, are unconstitutional under the First and Fourteenth Amendments to the U.S. Constitution because these policies and practices constitute an effective denial of timely public access to new civil petitions, which are public court records to which the First Amendment right of access applies.

2.     A preliminary and permanent injunction against Defendants, including their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them, or at their direction or under their control, prohibiting them from continuing their policies and practices in the Polk County District Court that deny Plaintiffs timely access to new civil petitions, including, *inter alia*, their policies and practices of denying access to petitions until after

administrative processing.

3.    An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

4.    All other relief the Court deems just and proper.


Date:   May 19, 2023                          Respectfully submitted,


                                              By:  /s/ *Gary Dickey*

                                              Gary Dickey, AT#000199
                                              *Counsel of Record for Plaintiff*
                                              DICKEY, CAMPBELL, & SAHAG LAW
                                              FIRM, PLC
                                              301 East Walnut Street, Suite 1
                                              Des Moines, Iowa 50309
                                              Tel. (515) 288-5008
                                              Fax (515) 288-5010
                                              gary@iowajustice.com

                                              Herbert R. Giorgio, Jr. (MO #58524)*
                                              Andrea R. Butler (MO #74978)*
                                              BRYAN CAVE LEIGHTON PAISNER LLP
                                              211 N. Broadway, Suite 3600
                                              St. Louis, MO  63102
                                              Tel. (314) 259-2000
                                              Fax (314) 259-2020
                                              herb.giorgio@bclplaw.com
                                              andrea.butler@bclplaw.com
                                              *admission pro hac vice pending*

                                              *Attorneys for Plaintiffs*